IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ANGELA SCOTT,           )
                        )
       Plaintiff,       )
                        )
v.                      )   Case No. CIV-10-128-KEW
                        )
MICHAEL J. ASTRUE,      )
Commissioner of Social  )
Security Administration,)
                        )
       Defendant.       )

## OPINION AND ORDER

Plaintiff Angela Scott (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 30, 1971 and was 36 years old at the time of the ALJ's decision. Claimant completed her education through the ninth grade and received training as a phlebotomist and a certified nurse's assistant. Claimant worked in

the past as a certified nurse's assistant. Claimant alleges an inability to work beginning April 27, 2005 due to limitations arising from respiratory failure.

## Procedural History

On August 16, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On June 10, 2008, an administrative hearing was held before ALJ John W. Belcher in Tulsa, Oklahoma. On August 28, 2008, the ALJ issued an unfavorable decision on Claimant's applications. On February 18, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in failing to: (1) propound a proper hypothetical question to the vocational expert and formulate a proper RFC at step five; (2) properly consider all of the medical source evidence; and (3) engage in a proper credibility evaluation.

## Step Five Analysis

Claimant contends the ALJ failed to properly question the vocational expert ("VE") during the hearing. The ALJ posed the following hypothetical question to the VE:

> ALJ: . . . . I want you to assume a 36 year old individual with a limited education but with training in both as a CNA and a phlebotomist, and the work experience as you have outlined in our report and through testimony today. Actually there has been no reports. So through your testimony today. This individual is limited to lifting no more than 10 pounds occasionally and less than 10 pounds frequently with pushing and pulling consistent with the lifting and carrying restrictions. The person could stand or walk for a total of two hours out of an eight hour day, and sit for six hours out of an eight hour day, and the job should allow her to use her oxygen tank, on occasion. I'm looking at this and it looks like she has used it about three or four times for twenty to forty minutes over a two week period. So that will give you some idea of the frequetncy, again, with which she uses it. I take it back. She used it six times in an eighteen day period. So about once every three days. Of course, that includes weekends and everything. The individual could occasionally climb stairs, balance, bend or

> stoop, kneel, crouch, or crawl. I do not want her
> to do climbing of ladders, ropes, or scaffolding.
> She should avoid exposure to extremes of cold and
> heat, and should avoid fumes, odors, dust, toxins,
> and gases about that found at ground level. . . .
>
> * * *
>
> As a result of her depression I don't want her
> doing complex detailed work. She could do simple
> tasks. I think she could even do, I think she
> could do moderately complex tasks, quite frankly.
> However, I don't want her doing work that requires
> safety operations or hypervigilance because I'm a
> little afraid of the side effects that some of her
> mediation may not keep her just alert as she might
> otherwise be.

(Tr. 1038-40).

Based upon this hypothetical, the VE testified Claimant could not perform her past relevant work. (Tr. 1040). Other jobs in the economy were identified that the VE stated Claimant could perform including order clerk, credit card interviewer, and clerical mailer - all sedentary, unskilled positions. (Tr. 1041).

In his decision, the ALJ found Claimant suffered from the severe impairments of obesity, hypertension, diabetes mellitus, and COPD. (Tr. 1063). In his RFC assessment, the ALJ determined Claimant could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, push and pull consistent with lifting and/or carrying restrictions, stand and/or walk 2 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday,

6

and use oxygen one out of three days, for 20 minutes each time. Claimant was limited by the ALJ to only occasionally climbing stairs, balancing, bending, stooping, kneeling, crouching, and crawling and no climbing ladders, ropes, and scaffolds. The ALJ also found Claimant was unable to tolerate extreme cold or heat, fumes, odors, dust, toxins, and gases. He limited Claimant to simple tasks and moderately complex work, requiring no safety operations and hypervigilance. (Tr. 1064).

The limitation on the use of oxygen in the hypothetical question and the RFC are not in conflict. While the ALJ's questioning might be viewed as somewhat confused, he corrected himself to limit the use of oxygen to one out of three days - the same as that incorporated in the RFC. A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). Claimant's impairments and limitations were adequately represented in the questioning of the VE.

Claimant's citation to a number of cases from other jurisdiction where vocational experts testified unscheduled breaks precludes employment. These references have no bearing upon the propriety of the ALJ's inquiry in this case. Only the specific

7

testimony provided by the VE has persuasive value under the particular factual scenario presented in this case.

Claimant also contends the oxygen requirement is "similar to the sit/stand option, which will erode the occupational base for a full range of unskilled sedentary work when not accommodated by scheduled breaks and a lunch period." Claimant states that it is unclear whether sufficient jobs are available to constitute a sufficient number of jobs. Claimant's conclusions are curious, at best. If Claimant is arguing the ALJ needed to show jobs are available in the State of Oklahoma, that argument has been rejected by the Tenth Circuit. Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009). The VE testified that the three jobs identified under the limitations stated by the ALJ existed in sufficient numbers in the national economy. (Tr. 1041). This testimony satisfies the requirements for establishing available employment.
No error is attributed to this issue.

### Treating Physician Opinion

Claimant asserts the ALJ improperly rejected the opinion of her treating physician, Dr. Elaine Quintana. Dr. Quintana authored a letter on March 9, 2006 which set out Claimant's treatment for her pulmonary condition. She than concludes that "[i]t is my clinical impression that the extent of this patient's pulmonary

8

fibrosis is extensive enough that she will never be able to resume full employment, will never be able to work outside the home, and it is anticipated that within a very short period of time she may actually be required to have a heart and lung transplant in order to continue to live." (Tr. 397-99).

In his decision, the ALJ noted Dr. Quintana's opinion. (Tr. 1067-68). He concluded, however, that Dr. Quintana's statements were the only suggestion in the medical record to indicate the possibility of the need for a heart and lung transplant. The ALJ also found no other treating or examining physician indicated Claimant was disabled or "that she even has limitations greater than those determined in this decision." The ALJ did note Dr. Quintana's actions in February of 2006 where she admitted Claimant had not manifested hypoxia to a level that would qualify her for oxygen but she still released Claimant from the hospital on oxygen, despite the fact her condition had improved and she was stable enough for discharge. (Tr. 1071).

Admittedly, Dr. Quintana's opinions stand out in the record as being extremely dire in their view of Claimant's prognosis as compared with every other consultative or treating opinion in the record. This Court does question the manner in which the ALJ addressed Dr. Quintana's opinion in the decision.

In deciding how much weight to give the opinion of a treating

9

physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted).

After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

It is not apparent from the decision that the ALJ went through the required Watkins analysis or the level of weight he afforded Dr. Quintana's opinion as it is not expressly stated in the decision. On remand, the ALJ shall re-evaluate Dr. Quintana's opinion, state the weight the ALJ deems he should give the opinion, and specifically reference any contradictory evidence which would diminish the weight afforded to it.

**Credibility Determination**

The ALJ concluded Claimant's credibility was suspect in light of the medical record. The ALJ cited to specific portions of the record which contradicted Claimant's testimony on the level of limitation her condition caused. (Tr. 28).

11

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. This Court finds no error in the ALJ's credibility analysis. Should he wish to revisit the testimony in light of re-evaluating Dr. Quintana's opinion, he certainly may do so on remand, though it is not

required to comply with the law.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 23rd day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE